{¶ 25} Contempt consists of disobedience of, or resistance to, a lawful writ, process, order, rule, judgment, or command of a court or officer. R.C. 2705.02. The domestic relations court abused its discretion when it failed to find Dr. Dean in contempt for disobedience of and resistance to duties imposed on him by the judgment and decree of dissolution terminating his marriage to Mrs. Cheadle.
 {¶ 26} The Final Judgement And Decree of Dissolution of Marriage (Dkt. 8) journalized by the domestic relations court on April 25, 1995, provides that "the SEPARATION AGREEMENT filed with the PETITION herein is made an ORDER of this COURT. THE PARTIES are ORDERED to fulfill each and every obligation imposed by the SEPARATION AGREEMENT."
 {¶ 27} Under the caption Insurance Benefits, the Separation Agreement provides:
 {¶ 28} "It is the agreement of the PARTIES that HUSBAND shall maintain the ADA life insurance policy or other life insurance policy of WIFE'S choosing on his own *Page 11 
life for the benefit of WIFE in its current amount of Three Hundred Thousand Dollars ($300,000.00), whichever is greater. WIFE shall pay the premium costs for the policy.
 {¶ 29} "HUSBAND shall maintain any other life insurance upon his life, naming the children of the PARTIES as irrevocable beneficiaries. WIFE shall be trustee of such benefits until the children each become twenty-one (21) years of age."
 {¶ 30} The ADA policy to which that provision of the Separation Agreement refers was a policy of insurance on his life that Dr. Dean had maintained through his membership in the American Dental Association. Following their divorce, Kim Cheadle paid the premiums on the ADA policy (T. 21) until, without notice to Mrs. Cheadle, Dr. Dean allowed his membership in ADA to lapse, terminating the policy of insurance he was obligated by the decree to maintain.
 {¶ 31} Kim Cheadle testified that when she learned the ADA policy was no longer in effect, and Dr. Dean not having obtained the replacement coverage he was required by the decree to "maintain," she applied for insurance coverage on his life in the same amount from several other insurers. Though Dr. Dean cooperated in submitting to the required medical examinations, he refused to sign a waiver of ownership rights the insurers required. (T. 21). As a result, since 2002 Mrs. Cheadle has not had the life insurance benefit Dr. Dean was ordered to maintain for her benefit.
 {¶ 32} Dr. Dean did not dispute Mrs. Cheadle's testimony. Instead, he testified that he believed the insurance on his life payable to his wife was intended to benefit their two sons, and that he therefore instead purchased two policies of insurance on his life in the face amount of $250,000, one for the benefit of each son. (T. 85). Dr. Dean did not deny that he refused to waive ownership rights of the policies Mrs. Cheadle *Page 12 
wished to procure. Neither did he offer any reason for why he had.
 {¶ 33} The trial court declined to find Dr. Dean in contempt for failure to provide insurance on his life for the benefit of Mrs. Cheadle, holding that the issue was not properly before the court because it had not been presented in the motion alleging contempt that Mrs. Cheadle filed on March 1, 2004 (Dkt. 48), but was instead alleged in the Memorandum Mrs. Cheadle filed in support of her motion. (Dkt. 49). However, the court wrote that it would address the issue "[r]egardless of the foregoing," and then made the following finding:
 {¶ 34} "At the hearing herein, Ms. Cheadle did not sustain her burden of proof in establishing that Mr. Dean himself caused any termination of an ADA life insurance policy or that he failed to cooperate with her choice of another life insurance policy of her choosing. In consideration of the foregoing, this Court does not find Mr. Dean in contempt of this Court's prior Orders concerning this issue even if the issue was properly before the Court, which it was not."
 {¶ 35} Dr. Dean did not object or move to strike the allegation in the Memorandum Mrs. Cheadle filed concerning his failure to provide life insurance. At the hearing on her motion, evidence concerning his alleged failure was admitted without objection. Civ.R. 15(B) provides: "When issues not raised in the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." The same provision applies to "all motions and other papers provided for by these rules." Civ.R. 7(B).
 {¶ 36} The trial court erred when it held that the issue of Dr. Dean's alleged contempt for disobedience of or resistance to the court's order that he provide insurance *Page 13 
on his life in the face amount of $300,000, payable to Mrs. Cheadle, was not properly before the court, after evidence on the claim was admitted without objection. Civ.R. 15(B), 7(B).
 {¶ 37} The trial court further abused its discretion when, in a wholly conclusory statement, the court found that Mrs. Cheadle "failed to sustain her burden of proof on the issue. Mrs. Cheadle had requested findings by the court pursuant to Civ. R. 52. The court was then required to state its "conclusions of fact" in writing. The finding the court made fails to satisfy that standard, which required the court to explain why or how Mrs. Cheadle failed to satisfy her burden of proof.
 {¶ 38} The court's finding is inexplicable on this record. In fact, contrary to the court's conclusion, the evidence is undisputed that Dr. Dean caused the coverage provided by the ADA policy to terminate by quitting his membership in the ADA, and he failed to provide the substitute coverage the decree requires him to maintain in that event. Dr. Dean thereby disobeyed an obligation expressly imposed on him by the decree. Dr. Dean's explanation that he believed the requirement that he provide insurance for Mrs. Cheadle's benefit was intended for the benefit of the parties' two sons does not excuse his failure. Indeed, a separate, companion provision of the Separation Agreement, quoted above, imposes an independent duty on Dr. Dean to provide "other life insurance upon his life" for the benefit of his sons. Doing that does not excuse his disobedience of a resistance to the provision of the decree requiring him to maintain a policy of life insurance with benefits of $300,000.00 payable to Mrs. Cheadle.
 {¶ 39} The majority finds no abuse of discretion because, after Dr. Dean allowed *Page 14 
his ADA coverage to lapse and had not obtained other coverage, Mrs. Cheadle insisted on owning a replacement policy she applied for. That was not an impediment or consideration that Dr. Dean cited in his testimony. Further, after his prior failures, and in view of her own obligation to pay the policy premiums, Mrs. Cheadle was justified in wishing to own a replacement policy. Otherwise, and if Dr. Dean owned it, he could allow the policy to lapse as he had before. The issue of which party "owns" the policy is no more than a red herring contrived to justify plain and undisputed contempt on the part of Dr. Dean.
 {¶ 40} It's worth noting that Dr. Dean is a highly-trained professional, a dentist, who retired from the United States Air Force in 2001 with the rank of Lieutenant Colonel, after twenty years service. He now maintains a lucrative dental practice from which in 2003 his income was $193,000. In addition, his Air Force retirement pay in the year 2005 was almost $50,000. For a person of his accomplishments, Dr. Dean's claimed inability to fathom his obligation to provide insurance on his life for the benefit of Mrs. Cheadle lacks credibility.
 {¶ 41} Even more inexplicable is Dr. Dean's claimed befuddlement with respect to his duty to maintain survivor's benefits from his military retirement for Mrs. Cheadle. The Separation Agreement provides, under the caption "Retirement Benefits":
 {¶ 42} "It is the agreement of the PARTIES that the portion of the retirement benefits of the PARTIES which were earned during this marriage are a joint marital asset. It is therefore the agreement of the PARTIES that they will divide the accrued benefits equally when they are received.
 {¶ 43} "The measure of each PARTY'S interest in the retirement benefits *Page 15 
accrued by the other PARTY shall be the number of years of marriage divided by the eventual number of years of retirement benefit accrual times one half.
 {¶ 44} "The parties shall maintain the survivor benefits for the benefit of WIFE on the retirement benefits and shall share equally the payment of the premium for the said survivor benefits out of the gross receipts from retirement benefits before distribution."
 {¶ 45} From his current monthly retirement benefit of $4,093, Dr. Dean remits a 28.25% share to Mrs. Cheadle. When Dr. Dean dies, his retirement benefit will terminate, and along with it Mrs. Cheadle's right to the share of the benefit she is due. In order to avoid a termination of benefits to Mrs. Cheadle, the decree provides that the parties will maintain separate "survivor benefits" for Mrs. Cheadle.
 {¶ 46} Dr. Dean's expert witness, Edwin C. Schilling, testified that because a military retiree's benefits terminate upon his death, "the Government has established a benefit which would permit a portion of the member's retired pay to continue after the death of the member to be paid to certain named beneficiaries." (4-28-06 hearing, T. 38). The plan is called the Survivor Benefit Plan, or "SBP." Mr. Schilling further testified that when the decree of dissolution became final, in 1995, Mrs. Cheadle was not eligible for SBP coverage because Dr. Dean had not then accrued twenty years of military service, which is the minimum service requirement for SBP eligibility. (T. 56). Mr. Schilling also testified that had an application for SBP coverage then been submitted, it would have been rejected because Dr. Dean lacked the necessary years of service. (T. 39).
 {¶ 47} Dr. Dean retired in August of 2001, with slightly in excess of twenty years actual service in the Air Force. When he retired, Dr. Dean signed a form captioned *Page 16 
"Data For Payment of Retired Persons," (Plaintiff's Exhibit 7). Paragraph 26 of the form permits the retiree to select from among seven options for SBP coverage. One permits the applicant to "elect coverage for my former spouse." Dr. Dean did not elect that coverage. Instead, Plaintiffs Exhibit 7 reflects that he selected the following option: "I elect not to participate in SBP."
 {¶ 48} Payment of SBP benefits are subject to two conditions: the retiree must have died, after electing SBP coverage, and the former spouse who is designated a beneficiary may not then have remarried. Mrs. Cheadle had remarried when Dr. Dean retired in 2001. He testified that because of that, as well as unspecified "conflicting statements" (3-7-06 hearing, T. 81), he rejected SBP coverage for Mrs. Cheadle.
 {¶ 49} When it was discovered that Dr. Dean had rejected SBP coverage for Mrs. Cheadle, he attempted to amend his election. In a letter to the Board for Correction of Air Force Records dated July 22, 2002 (Plaintiff's Exhibit 6), Dr. Dean wrote:
 {¶ 50} "I am requesting a correction of an error on my DD Form 2656, Data For Payment of Retired Personnel, that I completed during my out-processing for Retirement from the U.S. Air Force on August 3, 2001. I misunderstood the former spouses section of the Survivor Benefit Plan Information Guidebook. I felt that due to my former spouses (sic) remarriage that she did not qualify for this benefit even though our Decree of Dissolution of Marriage directed it (see Separation Agreement, Retirement Benefits, page 5, paragraph 3).
 {¶ 51} "I now understand that she is entitled to this but would not receive any monetary benefits upon my death unless she was single (divorced or widowed). I also understand that no premiums can be taken from my retirement pay while she is *Page 17 
remarried. I am requesting that the SBP be calculated on my selection of my base pay amount to be the minimum possible which is $300 per month."
 {¶ 52} The Board of Corrections denied Dr. Dean's request. However, at the April 28, 2006 hearing, Mr. Schilling, Dr. Dean's expert, testified that an open enrollment for SBP coverage was then available through September of that year. (T. 58). Exercise of that option would require payment of back-premiums. Even though the decree requires the parties to "share equally the payment of the premiums," Dr. Dean testified that in his view, due to the amount of back-premiums he projected, the whole cost should instead be borne by Mrs. Cheadle. (3/7/06 hearing, T. 83). The audacity of his contention ignores the fact that the failure to comply with the requirement of the decree was his, not Mrs. Cheadle's. It also reflects the attitude he has taken with respect to his obligations under the decree, including his election of the $300 minimum monthly benefit when he attempted to obtain SBP coverage for Mrs. Cheadle in his letter dated July 22, 2002.
 {¶ 53} The trial court nevertheless found that Dr. Dean's failure to obtain SBP coverage for Mrs. Cheadle when it was available to him upon his retirement in 2001 did not represent disobedience of or resistance to the orders of the decree, and therefore cannot constitute contempt. R.C. 2705.01(A). In arriving at that conclusion the court reasoned that Dr. Dean could not then have acted to "maintain survivor benefits for the benefit of Mrs. Cheadle, as the decree requires him to, because Mrs. Cheadle had remarried when Dr. Dean retired.
 {¶ 54} It is undisputed that a former spouse for whom SBP coverage was obtained is nevertheless ineligible for payment of SBP benefits upon the retiree's death *Page 18 
if the beneficiary is then remarried. However, remarriage is not likewise a bar to obtaining SBP coverage for a former spouse when the retiree has sufficient service credits to obtain it. The trial court's rationale relies on a confusion of SBP "benefits" with SBP "coverage."
 {¶ 55} The court's conclusion that SBP "benefits" could not have been paid to Mrs. Cheadle when Dr. Dean retired because she was then remarried is correct. It is also correct that SBP benefits were then unavailable because Dr. Dean was yet alive. However, in order to "maintain survivor benefits for the benefit of Mrs. Cheadle payable after his death, Dr. Dean was required to obtain SBP coverage for her while he is alive. As with insurance, coverage must proceed payment of the benefit when the insurable event occurs. Dr. Dean rejected SBP coverage when it was available to him, disobeying the requirement of the decree to "maintain survivor benefits for the benefit of" Mrs. Cheadle.
 {¶ 56} The majority finds no abuse of discretion, agreeing with the trial court that there were no "survivor benefits" to "maintain" when Dr. Dean retired, because Mrs. Cheadle had remarried. The majority acknowledges the defect in that conclusion, however, stating that Mrs. Cheadle's right was "inchoate;" that is, a right to future benefits for which she could be eligible if Dr. Dean obtains SBP coverage and Mrs. Cheadle is unmarried when Dr. Dean dies. Nevertheless, papering over the matter, the majority concludes that, because Mrs. Cheadle failed to elect survivor benefits on her own without Dr. Dean's assistance, and because both are charged by the decree to maintain the benefits, the fault is hers, not Dr. Dean's. The majority cites "undisputed" testimony at pp. 83-84 of the transcript of the March 7, 2006 hearing. *Page 19 
 {¶ 57} The majority misconstrues the evidence. Dr. Dean testified that Mrs. Cheadle could have acted within one year following their divorce to seek SBP coverage for benefits of "up to half of my or half of her pay which is not 100 percent but up to 55 percent of her pay.
 {¶ 58} "If she does not elect to do this, which she did not do, that if I do directive action or changes that I do to initiate this myself, it's my choosing and I'm allowed to choose the minimum, which is $300." (3-7-06 hearing, T. 84).
 {¶ 59} There is no evidence that Mrs. Cheadle was aware that she had the option of applying for SBP coverage during the year following her 1995 divorce from Dr. Dean. From the record, it appears that Mrs. Cheadle's opportunity was merely to advise the Air Force that her marriage to Dr. Dean had terminated, not to apply for SBP coverage. Applying the trial court's rationale for excusing Dr. Dean from seeking SBP coverage during that same time, Mrs. Cheadle's application would have been unavailing because Dr. Dean did not then have the minimum twenty years service for SBP coverage, and didn't have the required minimum service until he retired in 2001. That fact was confirmed by Dr. Dean's expert, Mr. Schilling, who testified that an application for SBP coverage would have been denied had one been submitted prior to Dr. Dean's satisfaction of the minimum service requirement. (T. 39).
 {¶ 60} The pertinent and decisive fact is that Dr. Dean, after achieving twenty years service and electing to retire, rejected SBP coverage for Mrs. Cheadle when he executed the document in the record marked as Plaintiff's Exhibit 7. Dr. Dean, a senior officer and an educated professional, attributes his act to "conflicting statements" (3-7-06 hearing, T. 81) he received at the time, but doesn't explain what those statements *Page 20 
were or who made them. The decree and separation agreement imposed an affirmative duty on Dr. Dean to "maintain survivor benefits for the benefit of Mrs. Cheadle. Dr. Dean acknowledged that duty when he wrote to the Board of Corrections seeking SBP coverage for Mrs. Cheadle. (Plaintiffs Exhibit 6). By rejecting SBP coverage when it was available to him, Dr. Dean not only resisted the command of the court's order but disobeyed its express terms, and is guilty of contempt as that is defined by R.C. 2705.01(A). The distinction between SBP "benefits," which were not available, and SBP "coverage," which was, bears no genuine relation to what the decree required Dr. Dean to do, and what he failed to do.
 {¶ 61} As a result of the trial court's judgment, and the majority's unfortunate endorsement of it, Mrs. Cheadle has been deprived of valuable rights and benefits which the parties agreed in their separation agreement she would have and which the court's decree ordered Dr. Dean to provide her. The trial court abused its discretion when it failed to find Dr. Dean in contempt and failed to grant relief to Mrs. Cheadle by ordering Dr. Dean to cooperate in obtaining life insurance coverage in the amount of $300,000, payable to Mrs. Cheadle and ordering him to purchase some additional form of insurance or annuity to take the place of SBP coverage he rejected. Dr. Dean's own expert, Mr. Schilling, testified that is often done when survivor benefits are unavailable in a retirement plan, as the SBP benefits to which Mrs. Cheadle is entitled now appear to be due to Dr. Dean's act of disobedience. *Page 1